1
2
3              UNITED STATES DISTRICT COURT
4                    DISTRICT OF NEVADA
5                          * * *
6  ROBERT LOGAN BERRY, JR.,              Case No. 3:16-cv-00470-MMD-WGC
7                        Petitioner,            ORDER
         v.
8
9  KYLE OLSEN,[1] *et al.*,
10                     Respondents.
11

## I.    SUMMARY

Petitioner Robert Logan Berry, Jr., who pleaded no contest to attempted robbery and was sentenced as a habitual criminal to ten years to life in Nevada state prison, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before this Court for adjudication of the merits of Berry's counseled, amended petition, which alleges a single ground for relief: his judgment of conviction is void because the State of Nevada did not have jurisdiction over his crime. (ECF No. 24 ("Petition").) For the reasons discussed below, the Court denies the Petition and grants a Certificate of Appealability.

## II.   BACKGROUND

Fox Peak Station, a gas station in Churchill County, Nevada, is owned by the Fallon Paiute-Shoshone Indian Tribe through its Fallon Tribal Development Corporation.

---

[1]The state corrections department's inmate locator page states that Berry is currently incarcerated at Warm Springs Correctional Center. The department's website reflects that Kyle Olsen is the warden for that facility. At the end of this order, the Court directs the Clerk of Court to substitute Berry's current physical custodian, Kyle Olsen, as a respondent for the prior respondent Isidro Baca, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

(ECF Nos. 8-24 at 5; 23 at 2.) Berry, a non-Indian,[2] was charged with "attempt[ing] to rob Fox Peak by telling the clerk, Danny Luft Jr., to give him money or he would kill him and at the same time putting his hand in his coat pocket simulating a hand gun and pointing it at the clerk." (ECF Nos. 8-19 at 2-3; 8-24 at 7.) Berry was arrested by the Fallon Tribal Police after Luft, who was wielding a knife, chased Berry and tackled him in the parking lot. (ECF No. 8-24 at 9, 14.) Officer Richard Babcock of the Fallon Paiute Shoshone Tribal Police filed the criminal complaint against Berry in the Justice Court of New River Township. (ECF No. 8-3.)

Before sentencing, Berry's trial counsel challenged the State's jurisdiction over his crime, arguing that it fell within federal jurisdiction. (ECF No. 8-24 at 4-10.) The state district court disagreed, finding that "Berry is not a Native American . . . and the victim in this case," who the state district court identified as being Luft, was not a Native American. (*Id.* at 10.) Berry's challenge to his conviction was denied on direct appeal. (ECF No. 9-29.)

## III.  LEGAL STANDARD

28 U.S.C. § 2254(d)[3] sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

---

[2]This court uses the terms "Indian" and "non-Indian" in accordance with United States Supreme Court caselaw. *See, e.g.*, *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020).

[3]Berry argues that 28 U.S.C. § 2254's purported restrictions on the power of the federal judiciary to enforce federal law is unconstitutional. (ECF No. 40 at 16.) Berry argues: (1) 28 U.S.C. § 2254(d) "violates § 1 of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment, by depriving citizens in state custody of their fundamental right to meaningful *federal* review of the *federal* legality of their state detention"; (2) 28 U.S.C. § 2254(d) "unlawfully suspend[s] the writ of habeas corpus, in violation of Article I, § 9, cl. 2"; and (3) 28 U.S.C. § 2254(d) "unlawfully impinge[s] on the judicial power vested exclusively in the judiciary by Article III of the Constitution." (*Id.* at 1617 (emphases in original).) Regarding his first argument—28 U.S.C. § 2254(d) violates the Fourteenth and Fifth Amendments—Berry argues that 28 U.S.C. § 2254(d) requires federal courts to defer to the state court's interpretation of federal law, meaning that in cases in which a state imprisonment violates the federal constitution, the federal court is

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

---

often required to "stay its hand and deny relief." (*Id.* at 24.) The Court finds that this argument lacks merit. Although not discussed in the context of the Fourteenth and Fifth Amendments, the Ninth Circuit has stated generally that "[t]he constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute." *Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007). And because Berry admits the Ninth Circuit has rejected his latter two arguments (ECF No. 40 at 17), the Court declines to consider them.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

## IV.    DISCUSSION

In ground 1, Berry alleges that his judgment of conviction is void as a matter of federal law because the United States, rather than the State of Nevada, had jurisdiction over his crime, which was committed in Indian country. (ECF No. 24 at 5.) The United States has jurisdiction over public offenses committed in Indian country unless an exception applies. *See* 18 U.S.C. § 1152.

### A.    Consent exception for state jurisdiction under Public Law 280

In 1953, Congress passed Public Law 280 ("Public Law 280"), which gave "[t]he consent of the United States" to States, including Nevada, "not having jurisdiction with respect to criminal offenses [by or against Indians in Indian country,] . . . to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative jurisdiction action, obligate and bind the State to assumption thereof." Pub. L. No. 280, 67 Stat. 590 (1953). In 1955, Nevada enacted its first version of NRS § 41.430, in which it assumed "jurisdiction over public offenses committed by or against Indians in the area of Indian country in Nevada" except for areas of Indian country that the Nevada governor excluded by proclamation. *See* 1955 Nev. Stat., ch. 198, §§ 1, 2,

3, at 297. Importantly, the Nevada governor excluded Churchill County from the provisions of its first version of NRS § 41.430. (ECF No. 13-5 at 5.[4])

In 1968, Congress enacted 25 U.S.C. § 1321. *See* Pub. L. No. 90-284, 82 Stat. 78 (1968). This statute did not affect Public Law 280 jurisdiction for states that had already assumed jurisdiction. However, from that date forward, the law required Indian tribes to consent, through a special election,[5] before a state could assume jurisdiction over crimes committed by and against Indians in Indian country. *See* 25 U.S.C. § 1321(a)(1). The new law also allowed states to retrocede Public Law 280 jurisdiction. *See* 25 U.S.C. § 1323.

In 1973, Nevada amended NRS § 41.430 to its current form. *See* 1973 Nev. Stat., ch. 601, § 1, at 1051. NRS § 41.430(1) provides that "the State of Nevada . . . assume[s] jurisdiction over public offenses committed by or against Indians in the area of Indian country in Nevada . . . subject only to the conditions of subsection 3 and 4." Importantly, NRS § 41.430(4) provides that "the State of Nevada . . . recedes from and relinquishes jurisdiction over any" area "within th[e] state wherein the Indian tribe occupying any such area has failed or refused to consent to the continuation of state jurisdiction."

Thus, at the relevant time, Nevada only had jurisdiction over crimes committed by or against Indians in Indian country if the tribe occupying the area had given consent. The parties do not appear to dispute that the Fallon Paiute-Shoshone Tribe did not give prior consent to Nevada assuming jurisdiction over its territory. Consequently, by its terms, this consent exception for state jurisdiction does not apply.

///

///

---

[4]The Court takes judicial notice of this public record because it is not in dispute. *See, e.g.*, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

[5]25 U.S.C. § 1326 provides that "[s]tate jurisdiction . . . shall be applicable to Indian country only where the enrolled Indians within the affected area of such Indian country accept such jurisdiction by a majority vote of the adult Indians voting at a special election held for that purpose."

**B.** ***McBratney*** **Non-Indian exception for state jurisdiction**

Nevada has jurisdiction over state-law crimes that non-Indians commit in Indian country against non-Indians within the State of Nevada. *See United States v. McBratney*, 104 U.S. 621, 624 (1882); *see also McGirt v. Oklahoma*, 140 S.Ct. 2452, 2460 (2020) (reaffirming *McBratney* by explaining that "nothing we might say today could unsettle Oklahoma's authority to try non-Indians for crimes against non-Indians on the lands in question").

**C.** **State court determination**

In affirming Berry's judgment of conviction, the Nevada Supreme Court held:

> Appellant's conviction stems from his attempted robbery of a store clerk at the Fox Peak Station in Fallon. He argues that the district court erred by overruling his objection that the State lacked jurisdiction over the offense because it was committed on Indian land at an Indian-owned business.
>
> NRS 41.430(1) provides that the State of Nevada "assumes jurisdiction over public offenses committed by or against Indians in the areas of Indian country in Nevada." That provision does not apply, however, to any area of Indian country where the occupying Indian tribe has not consented to the State's jurisdiction over that area. NRS 41.430(4). Appellant argues that because the State has not provided an agreement between the tribe that owns Fox Peak Station and the State that allows Churchill County to retain jurisdiction, the United States has jurisdiction over the offense. Appellant's claim lacks merit for two reasons. First, NRS 41.430 is not at issue because neither appellant nor the store clerk is Indian. We reject appellant's contention that the tribal members, as owners of Fox Peak Station, were victims of the attempted robbery. *See* NRS 200.380(1) (defining robbery, in pertinent part, as "the unlawful taking of personal property from the person of another, or in the presence, against his or her will, by means of force or violence . . . "); *see also* NRS 193.330(1) (defining attempt). Second, even assuming that NRS 41.430 applies, where the record shows that the offense occurred in Churchill County, appellant had the burden to show that the offense occurred on lands over which the United States has exclusive jurisdiction. *See Pendleton v. State*, 103 Nev. 95, 99, 734 P.2d 693, 695 (1987) ("The defendant has the burden of showing the applicability of negative exceptions in jurisdictional statutes."). Because appellant failed to demonstrate that the district court erred in this regard, we ORDER the judgment of conviction AFFIRMED.

(ECF No. 9-29 at 2-3.)

1    Berry argues that this ground should be reviewed *de novo* because, *inter alia*, the

2    Nevada Supreme Court treated his claim as a state-law issue, rather than a federal-law

3    issue. (ECF No. 40 at 51-54.) The Court noted in its previous order that the Nevada

4    Supreme Court's analysis did not account for a few federal-law issues, as it "left unstated

5    the multiple steps of federal law that it needed to analyze before determining that the

6    state courts had jurisdiction." (ECF No. 34 at 5, 8.) However, the Court later noted that

7    it could not "say that the Nevada Supreme Court ruled on an issue solely of state law

8    when that state law itself implements federal law." (*Id.* at 10 (explaining that "[t]he current

9    version of § 41.430 cites to and implements the federal statutes that allow states to

10   assume jurisdiction over criminal and civil actions in Indian country with the consent of

11   the Indian tribes").) Based on the state law's implementation of federal law, the Court

12   determines that Berry has not rebutted the strong presumption that the Nevada

13   Supreme Court adjudicated the federal claim on the merits. *See Johnson v. Williams*,

14   568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly

15   addressing that claim, a federal habeas court must presume that the federal claim was

16   adjudicated on the merits."). The Court, therefore, reviews ground 1 under AEDPA's

17   deferential standard of review.[6]

18        **D.    Conclusion**

19        The parties do not dispute that Berry is a non-Indian and do not appear to dispute

20   that Fox Peak Station is part of Indian country.[7] Thus, the applicable question under

21   *McBratney* is whether Berry's crime was committed against an Indian or a non-Indian.

22   _____

23        [6]Berry also contends that the Nevada Supreme Court's decision was based on an
     unreasonable determination of the facts because it "assumed the existence of tribal
24   consent to Public Law 280 jurisdiction in the absence of evidence." (ECF No. 40 at 55.)
     The Court disagrees. The Nevada Supreme Court was merely discussing the burden of
25   proof regarding jurisdiction in response to Berry's argument that the State had the burden
     of proving consent.

26
     [7]Indian country is defined as "(a) all land within the limits of any Indian reservation
27   of the United States Government . . . , (b) all dependent Indian communities within the
     borders of the United States whether within the original or subsequently acquired territory
28   thereof . . . , and (c) all Indian allotments." 18 U.S.C. § 1151.

1    Respondents argue that Luft, a non-Indian, was the victim of the attempted

2  robbery. (*See* ECF No. 35 at 8.) Berry, however, contends that the *McBratney* exception

3  should be construed narrowly, allowing the State to exercise jurisdiction over an offense

4  in Indian country only if the offense does not involve or affect Indians. (ECF No. 24 at 7-

5  8 (citing *People of State of N.Y. ex rel. Ray v. Martin*, 326 U.S. 496, 500 (1946) ("[T]he

6  *McBratney* line of decisions stands for the proposition that States" have jurisdiction over

7  "crimes between whites and whites which do not affect Indians") and *Duro v. Reina*, 495

8  U.S. 676, 680 n.1 (1990) ("For Indian country crimes involving only non-Indians,

9  longstanding precedents of this Court hold that state courts have exclusive

10  jurisdiction."), *superseded by statute on other grounds in United States v. Lara*, 541 U.S.

11  193, 207 (2004)); *see also* ECF No. 40 at 34.) In construing the *McBratney* jurisdiction

12  exception narrowly, Berry argues that the Fallon Paiute-Shoshone Tribe, through its

13  Fallon Tribal Development Corporation (hereinafter "Corporation"), which owns the Fox

14  Peak Station, were involved in and were affected by Berry's crime because Berry

15  attempted to steal their property. (ECF No. 40 at 37–40 (citing *United States v. Chavez*,

16  290 U.S. 357, 365 (1933) for the general proposition that jurisdiction extends to crimes

17  "against the Indians or against their property").)

18    Attempted robbery has been defined by Congress and the Nevada Legislature.[8]

19  Federal criminal law provides that "[w]hoever . . . by force and violence, or by

20

21    [8]Federal criminal law would apply if Berry's crime was committed against an Indian
   whereas Nevada state criminal law would apply if Berry's crime was committed against a
22  non-Indian. *See United States v. Reza-Ramos*, 816 F.3d 1110, 1115-16 (9th Cir. 2016)
   ("[F]ederal criminal law is applicable in federal enclaves when the defendant is a non-
23  Indian and the victim is an Indian."); 18 U.S.C. § 1152 ("Except as otherwise expressly
   provided by law, the general laws of the United States as to the punishment of offenses
24  committed in any place within the sole and exclusive jurisdiction of the United States,
   except the District of Columbia, shall extend to the Indian country."); *Williams v. United*
25  *States*, 327 U.S. 711, 714 (1946) ("While the laws and courts of the State of Arizona may
   have jurisdiction over offenses committed on this reservation between persons who are
26  not Indians, the laws and court of the United States, rather than those of Arizona, have
   jurisdiction over offenses committed there, as in this case, by one who is not an Indian
27  against one who is an Indian.").

28

intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years." 18 U.S.C. § 2111. Similarly, Nevada law provides that "[r]obbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property."[9] NRS § 200.380(1).

Looking at the language of the crime, under either 18 U.S.C. § 2111 or NRS § 200.380(1), the Fallon Paiute-Shoshone Tribe, through its Corporation, was not directly involved in or affected by the attempted robbery. *See Duro*, 495 U.S. at 680 n.1; *Martin*, 326 U.S. at 500. Attempted robbery requires that Berry use force, violence, and/or intimidation in an attempt to take property. *See* 18 U.S.C. § 2111; NRS § 200.380(1). Berry cannot be said to have used force, violence, and/or intimidation against the Corporation, an incorporeal entity.[10] Instead, due to the nature of the crime of attempted robbery—as compared to a crime against property, *e.g.*, theft or burglary—it is apparent that Berry committed attempted robbery by use of force, violence, and/or intimidation only against Luft.

This is consistent with the holding in *United States v. Burns*, 701 F.2d 840 (9th Cir. 1983). In *Burns*, the United States Court of Appeals for the Ninth Circuit determined that the district court had jurisdiction over the Indian defendant who robbed a smoke shop located in Indian country because "the taking was from the employees" of the shop,

---

[9]Nevada has a separate enactment that defines an attempt: "[a]n act done with the intent to commit a crime, and tending but failing to accomplish it." NRS § 193.330(1).

[10]There does not appear to be a dispute between the parties that the Corporation is considered a person. *See* NRS § 0.039 (defining a person as "a natural person, any form of business or social organization and any other nongovernmental legal entity including, but not limited to, a corporation, partnership, association, trust or unincorporated organization"); 1 U.S.C. § 1 (explaining that "the word[ ] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

1    who were also Indian, regardless of whether the smoke shop itself was Indian-owned.

2    *Id.* at 843.

3          Accordingly, as the Nevada Supreme Court reasonably concluded, because

4    Berry, a non-Indian, committed attempted robbery against only Luft, another non-Indian,

5    the State of Nevada had jurisdiction. *See McBratney*, 104 U.S. at 624.[11] As such, the

6    Nevada Supreme Court's rejection of Berry's claim was neither contrary to nor an

7    unreasonable application of clearly established law as determined by the United States

8    Supreme Court and was not based on an unreasonable determination of the facts. Berry

9    is not entitled to federal habeas relief for ground 1.[12]

10   **V.    CERTIFICATE OF APPEALABILITY**

11         This is a final order adverse to Berry. Rule 11 of the Rules Governing Section 2254

12   Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore,

13   this court has *sua sponte* evaluated the claims within the petition for suitability for the

14   issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65

15   (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the

16   petitioner "has made a substantial showing of the denial of a constitutional right." With

17   respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable

18   jurists would find the district court's assessment of the constitutional claims debatable or

19

20         [11]And even if the Fallon Paiute-Shoshone Tribe, through its Corporation, was
21   sufficiently involved in or affected by Berry's crime, it is not readily apparent that the State
     of Nevada would lose jurisdiction over Berry's crime as it related to Luft. *See United States*
22   *v. Bruce*, 394 F.3d 1215, 1221 n.3 (9th Cir. 2005) ("Offenses committed by non-Indians
     against multiple victims, including both Indians and others, would fall subject to
23   competing, and perhaps concurrent, claims of federal and state court jurisdiction."); *but*
     *cf. Duro*, 495 U.S. at 680 n.1 (1990) ("For Indian country crimes involving *only* non-
24   Indians, longstanding precedents of this Court hold that state courts have exclusive
25   jurisdiction.") (emphasis added).

26         [12]Berry requests that the Court "[c]onduct an evidentiary hearing at which proof
     may be offered concerning the allegations in [his] amended petition and any defenses
27   that may be raised by respondents." (ECF No. 24 at 9.) Berry fails to explain what
     evidence would be presented at an evidentiary hearing. Further, the issue at hand is a
28   legal one, rather than a factual one. Berry's request for an evidentiary hearing is denied.

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id.*

Applying these standards, the Court finds that a certificate of appealability is warranted for ground 1. Reasonable jurists could debate whether the Fallon Paiute-Shoshone Tribe, through its Corporation, was involved in or affected by Berry's attempted robbery. *See Duro*, 495 U.S. at 680 n.1; *Martin*, 326 U.S. at 500. Although the Fallon Paiute-Shoshone Tribe, through its Corporation, was not *directly* involved in or affected by the attempted robbery, the level of involvement or affectedness required by *Duro* and *Martin* is unclear, especially here, where the crime in question requires force, violence and/or intimidation against a person *and* the taking of property. Looking at that latter point, the object of Berry's crime was to steal money and property from the Fallon Paiute-Shoshone Tribe, through its Corporation—not from Luft personally. Indeed, the charging document itself states that Berry "attempted to rob Fox Peak." (ECF No. 8-19 at 2.) Thus, reasonable jurists could debate whether Berry's crime was committed against an Indian—the Fallon Paiute-Shoshone Tribe, through its Corporation—such that the State of Nevada lacked jurisdiction. *See McBratney*, 104 U.S. at 624.

## VI.    CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 24) is denied.

It is further ordered that a certificate of appealability is granted for ground 1.

The Clerk of Court is directed to substitute Kyle Olsen for Respondent Isidro Baca, enter judgment accordingly, and close this case.

DATED THIS 29th Day of October 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

11